IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH ROBERT SAAVEDRA,

        Petitioner,

v.                                                          CIV 01-64 MV/KBM

TIM LEMASTER, Warden, et al.

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Joseph Saavedra's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254, *Doc. 1,* and Respondents' Answer, *Doc. 8.* Because he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 93 (2000); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.* Having considered the arguments, pleadings, and relevant law, I find the petition without merit and recommend that it be denied.

### I. Factual & Procedural Background

Petitioner was in prison at the PNM North Facility when Corrections Officer Albert Sanchez monitored, took notes, and taped a telephone conversation between Petitioner and a person named "Rich." Saavedra and Rich "made plans for a 'chick' to bring 'darts' and 'shit' to the prison. The 'shit' was described as 'killer, killer.'" *Answer, Exh. G* at 4; *see also id.* at 1-2,

5.[1]   Officer Sanchez testified that while he is not certified as an expert in prison slang and admitted terms can mean different things, in his experience "darts" means syringes and "killer" means good illegal drugs.  *Id.* at 4.

The day after the telephone call, a Ms. Erica Garcia was searched when she came to the prison to visit Saavedra.  She was found to have two syringes and a small amount of marijuana.  *Id.* at 4-5.  She and Petitioner were charged as conspirators, albeit to different specific crimes.  Petitioner was charged with solicitation to bring contraband into a prison and conspiracy to commit the bringing of contraband into a prison.  *Id.* at 1, 6.  Ms. Garcia was charged with bringing contraband into a prison, conspiracy to distribute marijuana, distribution of marijuana, and possession of drug paraphernalia.  She pleaded guilty to the contraband and conspiracy charges; the distribution and paraphernalia charges against her were dropped.  *Id.* at 3.

Although initially represented by an attorney who had interviewed Ms. Garcia, ultimately Saavedra represented himself at trial.  Prior to trial, Petitioner moved to produce the tape of his conversation with Rich and the tape Agent Adrian Lovato made of his interview with Mrs. Garcia.  He wanted these tapes to be able to "fully cross-examine witnesses and present any exculpatory evidence contained on the tapes."  *Id.* at 2.  However, the tapes had been lost.  The prosecutor argued that the tapes did not contain any exculpatory evidence, Saavedra would have the opportunity to cross-examine the witnesses, and the tapes were not lost as the result of bad faith.  The trial judge found no bad faith and ruled it would allow Saavedra to cross-examine Agent Lovato on how the tapes were handled.  *See id.* at 1-3.  During the cross-examination of

---

[1] Unless otherwise noted, all citations to Exhibits are those attached to Respondents' Answer.

Agent Lovato about the lost tapes, Petitioner was not permitted to ask , "What did [Ms. Garcia] tell you; what were her first words?" because the trial judge sustained the State's hearsay objection. *Id.* at 5.

Prior to trial, Petitioner also moved to exclude any testimony by Ms. Garcia because her testimony was induced by a plea agreement. This motion was likewise denied. *Id.* at 4. The trial judge further ruled that although Saavedra could ask about other terms of her plea agreement, he could not ask Mr. Garcia the number of years of incarceration she saved as a result of her plea bargain. *Id.* at 3-4.

The State also argued prior to trial that it should be permitted to introduce Saavedra's prior prison misconduct reports concerning drugs. For example, he had previously been found with a syringe and marijuana, tested positive for illegal drugs, and refused to submit to a later drug test. The State wanted to introduce this "prior bad acts" evidence as relevant to motive, plan, knowledge or absence of mistake under Rule 11-404(B). Apparently, the State's motion was unsuccessful at that time. *See id.* at 5.

At trial, Officer Sanchez testified about the conversation he monitored. On cross-examination by Petitioner, Officer Sanchez admitted he is not a certified expert in prison slang and that terms could mean different things. *Id.* at 4. Thereafter, the prosecution successfully moved to introduce the misconduct reports. The trial judge found that although Petitioner may not have so intended, he opened the door to the evidence by his cross-examination of Officer Sanchez challenging the meanings the officer ascribed to words such as "darts" and "killer, killer."

Ms. Garcia was the State's principal witness. She explained that she became a pen pal of Saavedra and subsequently spoke to him on the telephone and visited him in prison. Saavedra

then asked her to bring in whatever drugs she could find (he used code words for different drugs, assigning them different colors). Saavedra also gave her the telephone numbers of two men, one of whom was named "Rich." She went to Rich's house and he gave her syringes which were cut in a way that they could be concealed and used to conceal drugs. Ms. Garcia testified that she brought Saavedra the syringes and some of her own marijuana. *Id.* at 5-6.

The jury could not reach a verdict on the conspiracy count, but did convict Petitioner of soliciting to bring contraband into the prison. *Id.* at 6; *see also Exh. A*. Based on his status as a habitual offender with four prior felony convictions, his eighteen month sentence was enhanced by eight years. *See Exhs. B-C.*

The Public Defender was appointed to represent Saavedra on appeal, where it raised ten issues as state and federal constitutional claims. *Exh. G & attachment; see also Exh. D.* Petitioner's conviction and sentence were affirmed on appeal on April 5, 2000, and the New Mexico Supreme Court denied certiorari on May 24, 2000. *See Exhs. K - M*. This habeas action was filed on January 16, 2001 and raises the identical ten issues pursued on direct appeal.

## II. Analysis

Under AEDPA, if a state court decides a claim on the merits its decision is entitled to "deference" and a federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. ___ , 120 S. Ct. 1495 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied,* 121 S. Ct. 1117 (2001). Factual findings made by the state courts are entitled to a

4

presumption of correctness unless a petitioner can rebut the finding by clear and convincing evidence. 28 U.S.C. § 2254(e).

With the possible exception of the insufficiency of evidence claim, although it clearly rejected Petitioner's claims on the merits, the state court opinion did not specifically address the federal constitutional issues or cite federal decisions. It is not definitively settled whether application of the deferential AEDPA standards under these circumstances is warranted.[2] Nevertheless, I find that the analysis outlined in *Aycox v. Lytle,* 196 F.3d 1174 (1999), should control.

In *Aycox,* the Tenth Circuit explained that the state court need not mention federal law or

---

[2] Two Tenth Circuit panels have questioned whether AEDPA deference is warranted when the state court does not address the federal constitutional claim. The relevant portion of the unpublished opinion is quoted below in full and, as such, I will not attach it.

> Although Mr. Stuckey presented his due process claim regarding the exclusion of evidence to the Kansas Court of Appeals on direct appeal, that court did not explicitly address Mr. Stuckey's claim on due process grounds. Instead, its analysis relied on state law. *See State v. Stuckey,* No. 74, 853, slip op. at 205 (Kan. Ct. App. Feb. 21, 1997) (unpublished). While it might be arguable that we need not defer to the state court decision in this situation, c*f. Smith v. Scott,* [223 F.3d 1191, 1193 n.1 (10th Cir. 2000)], Mr. Stuckey not only fails to challenge the district court's use of this standard, but he encourages our application of it on appeal. We therefore will view the state court's decision as implicitly rejecting his federal claim, and will defer to its result. *See Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's result, even if its reasoning is not expressly stated.").

*Stuckey v. Koerner,* 229 F.3d 1164, 2000 WL 1346394 at *1 (10th Cir. 9/19/00). In *Smith,* which is cited in *Stuckey,* the Tenth Circuit noted that Petitioner presented an *ex post facto* claim to the state court based on the argument that rescinding earned time credits violated the clause. The state court summarily denied relief saying only that prisoners have no right to an earned credit level. The Tenth Circuit found that the state's "decision does not address Mr. Smith's *ex post facto claim* 'on the merits.'" 223 F.3d at 1193 & n.1.

even contain much reasoning to qualify as an "adjudication on the merits." As long as a claim is decided on the merits and not a state procedural ground, the state decision is entitled to deference. *Id.* at 1177. But where there is no reasoned application of the law to the facts, the federal habeas court must engage in an independent review of the record and pertinent federal law to ascertain whether the state's result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented. This "independent review" should be distinguished from a full *de novo* review of petitioner's claims. *See id.* at 1177-1178. I will discuss the claims in an order different from that set forth by Petitioner for the sake of clarity.

### A.  *Loss of Tapes*

Petitioner's third claim asserts that the loss of the tapes violates the Confrontation Clause and due process. Saavedra contends that he recalls exculpatory information in the tape of his telephone call to Rich. Neither here nor at the state court level, however, does he identify the nature of the alleged exculpatory information. Saavedra also maintains that he could not effectively cross-examine the witnesses without the tapes. *See Exh. J* at 1-3; *Doc. 1* at 4(b).

Petitioner's reliance on *Brady v. Maryland,* 373 U.S. 83 (1963) is misplaced, since it is *Trombetta/Youngblood* line of cases that controls claims of failure to preserve exculpatory evidence and requires proof of bad faith on the part of the prosecution. *E.g., Arizona v. Youngblood,* 488 U.S. 51 (1998); *California v. Trombetta,* 467 U.S. 479 (1984); *United States v. Gomez,* 191 F.3d 1214, 1218 (10th Cir. 1999). Petitioner's conclusory assertion is insufficient to establish that the tapes contained any exculpatory information. *E.g., Hatch v. Oklahoma,* 58 F.3d 1447, 1469 (10th Cir. 1995) ("In order to warrant relief, or, as an initial matter, even an

evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim.") (internal quotations omitted), *cert. denied,* 517 U.S. 1235 (1996).

Moreover, the state court's determination that there was no bad faith is the type of "subsidiary" factual finding underlying a legal determination that is presumed to be correct. *See Valdez v. Ward,* 219 F.3d 1222, 1230 (10th Cir. 2000) (whether defendant understood *Miranda* rights is question of fact), *petition for cert. filed 2/7/01; id.* at 1232 (whether statement constitutes unequivocal request for counsel is question of law).  Here, Petitioner makes no clear and convincing showing of bad faith, nor does my independent review of the record reveal one. *See* 28 U.S.C. § 2254(e)(1).

It should also be noted that

> [t]he Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination. *Pennsylvania v. Ritchie,* [480 U.S. 39, 51 (1987)]. . . .  However, the Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. [*Id.* at 53].  A defendant has engaged in effective cross-examination if the jury had sufficient information to make a discriminating appraisal of the relevant issue.

*Tapia v. Tansy,* 926 F.2d 1554, 1557 (10th Cir.) (internal quotations and other citations omitted), *cert. denied,* 502 U.S. 835 (1991).  Petitioner was afforded an opportunity to establish the fact that the tapes had been lost and otherwise challenge the witnesses' credibility by personally cross-examining them.  The fact that the tapes were lost itself bears on the credibility of Agent Lovato.  Under these circumstances, I find no constitutional infirmity.

### B.  Evidentiary Issues

Four of Petitioner's claims raise evidentiary issues, and are thus claims of error under state law and not cognizable in habeas corpus unless the admission or exclusion of evidence rendered his trial "fundamentally unfair." *E.g., Duvall v. Reynolds,* 139 F.3d 768, 787 (10th Cir.), *cert. denied,* 525 U.S. 933 (1998). "A trial is fundamentally unfair . . . if it is 'shocking to the universal sense of justice.'" *United States v. Tome,* 3 F.3d 342, 353 (10th Cir. 1993) (quoting *United States v. Russell,* 411 U.S. 423, 432 (1973)), *rev'd in part on other grounds,* 513 U.S. 15 (1995).

In his fourth claim, Saavedra argues that Ms. Garcia's testimony should have been excluded altogether under the Tenth Circuit's original *Singleton* decision because she agreed to testify after being "induced" to do so by a plea agreement. *Exh. J* at 6; *Doc. 1* at 4(b). This claim is without merit.[3] The initial *Singleton* decision was based on a federal statute inapplicable here, not the federal constitution, and the holding was vacated and subsequently disavowed *en banc. See United States v. Singleton,* 144 F.3d 1343 (10th Cir. 1998), *on rehearing en banc,* 165 F.3d 1297 (10th Cir.), *cert. denied,* 527 U.S. 1024 (1999).

Furthermore, due process also does not require the exclusion of testimony procured by a plea agreement where, as here, Petitioner had the opportunity to cross-examine the witness and there is no claim that the jury was improperly instructed on assessing witness credibility. *See e.g., Hoffa v. United States,* 385 U.S. 293, 311 (1966) (acknowledging risk that informer witness would have a motive to lie, Court stated "[t]he established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility

---

[3] Apparently, this is not the first time Petitioner has raised a claim of this sort. *See Saavedra v. Thomas,* 132 F.3d 43, 1997 WL 768288 at * 1 (10th Cir. 12/12/97) (Joseph Robert Saavedra convicted of 8/31/88 armed robbery/conspiracy contended offer of plea to accomplice that substantially reduced prison sentence posed unacceptable risk of perjury and amounted to denial of fair trial); *Exh. C* at 2 (the 8/31/88 prior armed robbery/conspiracy conviction).

8

of his testimony to be determined by a properly instructed jury."); *United States v. Fria Vazquez Del Mercado,* 223 F.3d 1213, 1215 (10th Cir.) (noting *Singleton* only involved question of statutory construction and did not address "whether due process forbids a district court from admitting testimony obtained by the government through an offer of lenient treatment;" holding, based on *Hoffa,* that where defendant opportunity to cross examine and jury correctly instructed, "potentially suspect nature of . . . testimony due to the government's offers of lenient treatment does not . . . render the admission of that testimony a violation of due process."), *cert. denied,* 121 S. Ct. 600 (2000).

In his first claim, Saavedra argues that he was denied the ability to fully cross-examine Ms. Garcia on her credibility because he was not permitted to ask her how many years incarceration she saved by her guilty plea. *Exh. J* at 3-5; *Doc. 1* at 4(b). The trial court disallowed the question under *State v. Brown,* 123 N.M. 413 (1997), *cert. denied,* 522 U.S. 973 (1997).

Cross-examination serves two purposes – it allows a defendant to impeach a witness' credibility and allows defendant to expose a witness' biases and possible motives for testifying. *See Davis v. Alaska,* 415 U.S. 308, 316 (1974). However, the right to cross-examine is "neither absolute nor unlimited." *United States v. Bindley,* 157 F.3d 1235, 1240 (10th Cir. 1998), *cert. denied,* 525 U.S. 1167 (1999). A trial court's decision to limit specific areas of inquiry on cross-examination is not erroneous if the jurors "had sufficient information to make a discriminating appraisal of the witness' motives and bias." *Id.*

In *Brown,* the New Mexico Supreme Court held that

> it was not necessary for the jury to consider the full benefit Jeremy received [*i.e.*, the number of years he would serve if convicted, compared to what he expected to serve as a result of the plea

9

> agreement] in order to properly assess any motive he might have
> had to lie. The trial court properly limited defense counsel's cross-
> examination while thoughtfully allowing defense counsel an
> opportunity to reveal bias.

123 N.M. at 416. In so holding, the state decision relied on the "well established principle" set forth in *Shannon v. United States,* 512 U.S. 573, 579 (1994), that jurors "are not to consider the consequences of their verdicts." The *Shannon* decision specifically notes that where, as here, "a jury has no sentencing function . . . [i]nformation regarding the consequences of a verdict is . . . irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*

After being caught in possession of drugs at the prison facility, Ms. Garcia agreed to testify for the State. Her motives for testifying were plain. Furthermore, "Defendant was permitted to expose Garcia's potential bias by cross-examining her on the nature of the charges brought against her and those dismissed as a result of the plea bargain." *Exh. K at 4.* Without introducing sentencing considerations of any sort, cross-examination questions could be fashioned to fully explore the areas of credibility, bias and motive. Introducing sentencing specifics for Ms. Garcia would have invited the jury to speculate about sentencing consequences for Saavedra. Thus, there is no constitutional infirmity in not allowing Saavedra to ask how much time Ms. Garcia saved by entering into the plea agreement.

Petitioner's sixth claim concerns the introduction of "prior bad acts," which the trial court initially excluded but later let in after Saavedra opened the door during cross-examination of Officer Sanchez. Saavedra argues the prior bad acts should not have been admitted because he

did not *intend* to open the door.  *Exh. J* at 8, *Doc. 1* at 4(b)(2).  His seventh alleged error is the trial court's sustaining of a hearsay objection when Petitioner asked Agent Lovato about the taped interview, "What did [Ms. Garcia] tell you; what were her first words?"  *Exh. K* at 7; *Exh. J.* at 9-10.  Saavedra maintains that the question was not offered for the truth asserted, but to test the agent's memory and attack his credibility regarding the lost tape of the witness interview.

These two incidents illustrate the perils of self-representation.  I find that neither of these rulings rendered the trial fundamentally unfair, either separately or in conjunction with the other claims addressed above.  In addition, for the reasons set forth below, I find that in light of the evidence against Saavedra, any prejudice from the admission of the prior bad acts was harmless. *See Duval,* 139 F.3d at 787-788.

### *C. Sufficiency of Evidence*

Petitioner's ninth claim is that the evidence was insufficient to support the verdict.  *Exh. J* at 11; *Doc. 1* at 4(b)(2).  The relevant inquiry is whether, after viewing all of the evidence "in the light most favorable to the prosecution, ***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis original).  This is the same standard applied by the New Mexico appellate courts for both a sufficiency of the evidence claim or on motions for a directed verdict.  *Exh. K* at 8 (citing *State v. Sutphin,* 107 N.M. 126, 130-31 (N.M. 1988) as outlining standard or review on appeal, which in turn applies *Jackson* standard ).  The New Mexico Court of Appeals found:

> Insofar as Defendant contends Garcia's testimony was unreliable, '[i]t is for the jury to weigh the credibility of the witnesses and the weight to be given that evidence.' . . .   In addition, Defendant

11

>       argues Garcia testified Defendant never specifically asked that she
>       bring him marijuana. . . .  Viewing all the evidence in the light most
>       favorable to the State, including evidence that Defendant gave
>       Garcia the phone numbers from whom she could get the 'colors,'
>       referring to drugs, and that Defendant told her to bring whatever
>       she could find, permits the reasonable inference, beyond a
>       reasonable doubt, that Defendant induced Garcia to bring him a
>       package of controlled substances.

*Id.*  To these findings I would add that there was evidence Saavedra specifically asked Ms. Garcia to bring syringes, which she did after getting them from Rich, and that Officer Sanchez testified about the conversation he overheard between Rich and Saavedra where Defendant asked for "darts" and indicated he had a "chick" to bring the "shit" into the prison.

In light of this evidence any rational juror could have found Saavedra guilty of soliciting bringing contraband into the prison.  *See* N.M. STAT. ANN. §§ 30-28-3, 30-22-14A.  Thus, regardless of whether this is reviewed as a matter of fact or law, the insufficiency of evidence claim is without merit.[4]

### D. Prosecutorial Misconduct

In Saavedra's fifth and eighth claims, he asserts that the prosecutor engaged in misconduct by certain remarks in her statements to the jury.  *Doc. 1* at 4(b)-4(b)(2).  At the conclusion of her opening statement, the prosecutor said, "During the course of the trial, during the course of listening to all the witnesses, during the course of listening to the questioning of the witnesses and what they have to say, I caution you on this; I ask you to look at the defendant, and to not let him con you, do not let him manipulate you as he has manipulated Erica Garcia."  *Exh. G* at 4.  Saavedra argues that this is an impermissible comment on his veracity.  *Exh. J* at 6.  During her

---

[4] The Tenth Circuit has not resolved whether sufficiency of evidence claims are resolved as questions of law or fact under AEDPA.  *Valdez,* 219 F.3d at 1237.

closing argument, the prosecutor stated, "This is a manipulator. This is a con man. This is a guilty man of these offenses." *Exh. G* at 6. Saavedra argues that this is an impermissible comment expressing the prosecutor's personal belief in his guilt. *Exh. J* at 10.

Because Defendant did not object to either of these remarks, the New Mexico Court of Appeal addressed the issues under the doctrine of "fundamental error," an exception to a state waiver rule. In New Mexico, the rule of "fundamental error" only applies in "exceptional circumstances" and the court's inquiry is whether there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done. *E.g., State v. Orosco,* 113 N.M. 780, 784 (1992); *see also Exh. K* at 6-7. That standard is similar to, but not the same, as the federal standard for prosecutorial misconduct claims. Therefore, I will review the claims independently.

I find the prosecutorial misconduct claims without merit. First, I disagree with Saavedra's characterization of the comments. The comment during opening can be fairly read as cautioning the jury to listen closely to the evidence instead of being "taken in" as had Ms. Garcia by Saavedra's apparent persuasiveness and charm. The comment during closing simply did not express the prosecutor's personal opinion.

Second, where, as here, no independent constitutional provision is implicated by the comments, the inquiry for prosecutorial misconduct is whether the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974); *see also Paxton,* 199 F.3d at 1217; *Fero v. Kerby,* 39 F.3d 1462, 1473 (10th Cir. 1994), *cert. denied,* 515 U.S. 1122 (1995). On habeas review, "to view the prosecutor's statements in context, we look first at the strength of the

13

evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. . . . Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." *Fero,* 39 F.3d at 1474 (internal quotations and citations omitted). Thus, even if the comments were improper, the question is whether they were significant enough to influence the jury. *E.g., Tillman v. Cook,* 215 F.3d 1116, 1129 (10th Cir.), *cert. denied,* 121 S. Ct. 664 (2000).

I find that there is no reasonable probability that the outcome would have been different. In light of the substantial evidence of Petitioner's guilt as discussed in the preceding section, none of the comments alone or taken together could have unfairly influenced the jury. Thus, neither of Petitioner's allegations of prosecutorial misconduct infected the trial with such unfairness that there was a denial of due process. *E.g., Pickens v. Gibson,* 206 F.3d 988, 999 (10th Cir. 2000).

### *E. Sentencing Issue*

In the tenth claim, Saavedra contends that a comment by the prosecutor on Saavedra's exercise of a constitutional right served as an impermissible ground for imposing the maximum sentence. *Exh. J* at 12-13; *Doc. 1* at 4(b). At sentencing, the prosecutor argued as follows:

> The court heard the testimony in this case. Mr. Saavedra deserves
> no leniency. What he did to the co-defendant [Ms. Garcia] and
> how he treated her, as if show was less than a human being; and
> considering the kinds of prior felony convictions that he has, he
> deserves the nine and a half. He earned it.

*Exh. G* at 7. Saavedra argues that this comment refers to the manner in which he cross-examined Ms. Garcia and sought to penalize him for exercising his right to confrontation. *Exh. J* at 12-13. The New Mexico Court of Appeals presumed the trial judge "disregarded any negative reference to Defendant's right of confrontation." Furthermore, because Defendant made no objection, the

court found the remark did not constitute fundamental error. *Exh. J* at 9.

In federal habeas, review of sentencing issues is circumscribed. Due process only requires that criminal defendants be punished as authorized by state law. *See Whalen v. United States,* 445 U.S. 684, 689 n. 4 (1980). Because Saavedra was not sentenced beyond the maximum authorized, he presents no cognizable claim for habeas relief. *E.g., Haynes v. Butler,* 825 F.2d 921, 923-24 (5th Cir. 1987) ("Although wide discretion is accorded a state trial court's sentencing decision and claims arising out of the decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law."), *cert. denied,* 484 U.S. 1014 (1988).

### *F. Double Jeopardy*

Petitioner's final argument that New Mexico's habitual offender statute violates double jeopardy borders on frivolous. *E.g., Witte v. United States,* 515 U.S. 389, 400 (1995) ("In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'") (citations omitted); *Yparrea v. Dorsey,* 64 F.3d 577, 579 (10th Cir. 1995) ("New Mexico's habitual offender statute does not multiply punishments for a prior crime, but simply increases the punishment for a new crime.").

Wherefore,

**IT IS HEREBY RECOMMENDED** that the Petition be denied and this action dismissed

with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

16